**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| 301, 712, 2103 AND 3151 LLC; 12 TWENTY-SECOND AND 1827 LASALLE LLC; 137 EAST SEVENTEENTH STREET LLC; 1522 LASALLE AVENUE LLC; 1728 SECOND AVENUE AND 1801 THIRD AVENUE LLC; 1806 AND 1810 THIRD AVENUE LLC; 1816, 1820 AND 1830 STEVENS AVENUE LLC; 1817 SECOND AVENUE LLC; 1900 AND 1906 CLINTON AVENUE LLC; 1924 STEVENS AVENUE LLC; 2020 NICOLLET AVENUE LLC; 2101 THIRD AVENUE LLC; 2323 AND 2401 CLINTON AVENUE LLC; 2417, 2423 AND 2439 BLAISDELL AVENUE LLC; 2427 BLAISDELL AND 2432 FIRST AVENUE LLC; 25 TWENTY-FIFTH STREET LLC; 2535 CLINTON AVENUE LLC; 2545 BLAISDELL AVENUE LLC; 2609 HENNEPIN AVENUE LLC; 2633 PLEASANT AVENUE LLC; 2720 PILLSBURY AVENUE LLC; 2738 AND 2750 PILLSBURY AVENUE LLC; 2809 PLEASANT AVENUE LLC; 600 FRANKLIN AVENUE LLC; AMY SMITH; BLAISDELL 3322, LLC; BLOOMINGTON 4035, LLC; BRYANT AVENUE PROPERTIES LLC; COLFAX APARTMENTS LLC;  DUPONT PROPERTIES LLC; FLETCHER PROPERTIES, INC.; FRANKLIN VILLA PARTNERSHIP, L.L.P.; FREMONT APARTMENTS, LLC; FREMONT TERRACE APARTMENTS, L.L.C.; GARFIELD COURT PARTNERSHIP, L.L.P.; GASPARRE NEW BOSTON SQUARE, LLC; GATEWAY REAL ESTATE, L.L.C.; JEC PROPERTIES, LLC; LAGOON APARTMENTS, LLC; LL LLC; | CIVIL ACTION NO. 20-cv-1904 (PAM/BRT)<br><br>**DECLARATION OF LEANNA STEFANIAK IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

NORTHERN GOPHER ENTERPRISES,
INC.; PATRICIA L. FLETCHER, INC.; and
RAY PETERSON,

                        Plaintiffs,

      v.

CITY OF MINNEAPOLIS,

                        Defendant.

I, Leanna Stefaniak, hereby declare as follows:

1.      I am the Chief Real Estate Officer and General Counsel of At Home Apartments, L.L.C. ("At Home Apartments").

2.      At Home Apartments is the management company for Gateway Real Estate, L.L.C. ("Gateway").

3.      Gateway is a Minnesota limited liability company that owns fifty-three (53) residential dwelling units located at 4610 Lake Street East in Minneapolis, Minnesota.

4.      Twelve (12) of the fifty-three (53) residential dwelling units owned by Gateway located at 4610 Lake Street East are Project Based Units that receive Section 8 rent subsidies from the Minneapolis Public Housing Authority and the U.S. Department of Housing and Urban Development.

5.      I, along with other At Home Apartments personnel, am responsible for screening potential tenants who seek to rent a Gateway residential unit.

2

6.     Leasing Gateway's property is an act that comes with serious risks.   It involves the demise of Gateway's own interest in its property and grants a tenant the exclusive right to possess its property during the term of the tenancy.

7.     A tenant who is in exclusive possession of Gateway's property may significantly damage the premises, which is time-consuming and expensive to remediate. The costs of remediating this damage often far exceeds the amount of any security deposits.   Tenants may also be unstable, dishonest, or disruptive, and they may pose a danger to other tenants and management or building maintenance staff's personal safety and quiet enjoyment of the property.

8.     A proceeding to evict this type of tenant can be time consuming and extremely costly.   While we handle some evictions in-house, others may require engaging legal counsel, given the nature of a lease and rights afforded residential tenants.   An eviction of one tenant can cost several thousand dollars in costs and fees, not including the time and attention necessary to see the process through.

9.     In my experience, tenants remain in the property while the eviction case is pending, causing unpaid rents to continue to mount, along with the possibility of further damage to the premises during the eviction process.   The owner rarely recovers unpaid rents or reimbursement of damage caused to the property.   It is generally extremely difficult to execute a judgment against an evicted tenant.

10.     At Home Apartments and Gateway also have a duty to address and prevent instances of disruptive criminal and nuisance conduct in Gateway's rental properties.

11.    At Home Apartments therefore takes great care to create and implement screening policies and procedures to limit these risks and ensure that it is excluding those individuals who will not uphold a safe, comfortable, and crime-free living environment in Gateway's property.

12.    At Home Apartments utilizes predictive factors that are objectively applied to qualify potential tenants.

13.    Specifically, we look at an applicant's criminal background check, credit report, rental history, and income to determine whether that applicant will make a successful tenant for Gateway's property.

14.    As an owner of residential dwelling units in Minneapolis, Gateway is subject to Minneapolis Ordinance No. 244.2030 (the "Ordinance").

15.    The Ordinance has changed the way At Home Apartments screens applicants on behalf of Gateway in several critical respects, and we are extremely concerned about how those changes will affect Gateway's rental property and its business.

16.    As noted above, At Home Apartments runs a criminal background check on all applicants to locate any prior criminal convictions the applicant may have.

17.    Prior to the Ordinance, if a criminal background check showed that an applicant was convicted of a crime, we would evaluate the severity of the crime, the amount of time since the crime occurred, and the history of recidivism, including whether the applicant committed multiple lower level crimes in a short period of time, to determine whether to rent to that applicant.  We would look specifically for criminal

convictions involving a threat of violence to a person or property, such as domestic abuse or assault.  We would reject an applicant with a criminal record inconsistent with this screening criteria.

18.    In our experience, prior criminal conduct can be predictive of disruptive conduct or the lack of stability necessary to meet ongoing lease obligations.

19.    Rejections were made out of concern for the safety of other tenants and employees, and because a criminal record is an indicator of the likelihood of lease compliance – safe and quiet enjoyment of the premises, taking care of the leased premises, timely payment of rent, and allowing other tenants to enjoy their units and common spaces.

20.    Under the Ordinance, we have had to change those set guidelines to allow for approvals of applicants who have committed serious crimes and been recently sentenced for those crimes.

21.    For example, we must now rent to an applicant that was convicted of a felony for a serious offense against a person, such as homicide, manslaughter, kidnapping, or assault, so long as that individual was sentenced for that crime more than ten (10) years prior to the application.

22.    By way of another example, we must now rent to an applicant that was convicted of a felony for rape, so long as that individual was sentenced for that crime more than seven (7) years prior to the application.

23.    We must now also rent to an applicant that was convicted of a misdemeanor for a sex crime, including sexual assault or prostitution, so long as that individual was sentenced for that crime more than three (3) years prior to the application.

24.    Furthermore, we must rent to an applicant that was convicted of three or more misdemeanors involving violence against a person or property, so long as that individual was sentenced for all of those misdemeanors more than three (3) years prior to the application.

25.    Renting to individuals with these types of serious criminal records is extremely concerning for At Home Apartments, Gateway, and our employees. It puts our other tenants and our employees in danger and makes it more difficult for us to prevent the commission of crimes or other concerning behaviors on Gateway's property.

26.    Indeed, we have recently seen first-hand the problems that occur when an individual with a criminal background resides in one of our properties. Earlier this year, an approved resident invited a non-approved resident into her apartment. That non-approved resident had ten (10) criminal convictions, ranging from misdemeanors to felonies, for various crimes, including assault, domestic assault, possession of a handgun, and drug possession, beginning in 2002 and as recently as 2019. Due to the violent nature of this individual, our resident, a single mother with two young children, fled the premises to escape. Because the resident was afraid to press criminal charges, and due to an eviction moratorium, we were not able to evict the non-approved resident until he lost the keys to the unit and attempted to break into it. Not only is he not paying rent for the apartment, he has caused other problems in the building, including threats to other

residents and significant property damage.  Under the Ordinance, in only two years, we would be prohibited from rejecting this individual's rental application based upon his criminal history.

27.    We also run a credit history report on applicants.  We obtain a credit report from a third-party agency that includes results predictive of consumers' likelihood of defaulting on their obligations and rely on that report in our overall evaluation of the applicant.

28.    Under the Ordinance, it is not clear what information in the credit history report we can rely upon, as it is not clear what information the City of Minneapolis considers to be directly relevant to fitness as a tenant.  This requires us to accept an application to rent a unit with no confidence that the applicant will be able to pay his or her rent.

29.    We also run a rental history search on applicants to determine whether the applicant has any prior evictions or anything else on his or her record that would be concerning to us, such as damaging the premises or posing a threat to other tenants, management, maintenance, employees, and/or tenants' quiet enjoyment of their residences.

30.    We do so because successful prior tenancy is probative of future success as a tenant in one of Gateway's units – safe and quiet enjoyment of the premises, taking care of the leased premises, and timely payment of rent.

31.    Prior to the Ordinance, if an applicant had negative references or a history of evictions on his or her record, the applicant was denied.

32.     Under the Ordinance, however, we can no longer reject an applicant for certain information obtained in the rental history search. If an applicant has an eviction less than one year old and there was no judgment or recovery issued, we must rent to that applicant. If an applicant has an eviction more than three years old and owes money to a prior landlord, we must rent to that applicant.

33.     Finally, we seek information about the applicant's income, as that information determines whether the applicant would be able to afford the required rent payment and is often a reason a tenant stops paying rent.

34.     Prior to the Ordinance, with the exception of the twelve (12) Section 8, Project Based Units, we instituted a minimum income test requiring income equal to three times the rent or higher. If the applicant did not meet this test, the applicant would be rejected.

35.     Under the Ordinance, however, we must rent to an applicant who does not meet this test, as long as that applicant can demonstrate a successful payment of rent with an income less than three times the rent. This puts Gateway at financial risk of tenants with a lower income not having the ability to pay the required rent.

36.     The cumulative effect of these prohibitions severely cripples our ability to rent to the applicants to whom we want to rent in order to avoid housing problem tenants in Gateway's property. It forces us to lease to tenants presenting a higher risk to other tenants, to tenants who may cause damage to Gateway's property, and to tenants who may default on their rent obligations.

37.   We are similarly concerned that compliance with the Ordinance will cause an increase in the rents charged for Gateway's properties.  We believe that being forced to rent to individuals with a serious criminal history will lead to increased property damage, which will cost money to fix.  In that same vein, being forced to rent to individuals with poor credit history, poor rental history, and/or lower income will lead to a higher default rate.  A high rate of default is economically devastating.

38.   Moreover, damage to property and defaults leads to increased rents for all tenants across all of Gateway's units.

39.   Given the number of properties and units Gateway owns and At Home Apartments manages, it is not feasible for us to conduct an individualized assessment of individuals who apply to rent units in Gateway's property.

40.   An individualized assessment would be extremely time consuming, onerous, expensive, and inefficient to review supplemental information and evidence for hundreds of potential tenants.  We would be required, in essence, to conduct a mini-hearing or mini-parole board evaluation of each and every applicant's past to determine whether they would be a suitable tenant for a Gateway unit.

41.   Gateway is concerned that if we do not fully comply with the Ordinance, we will be subject to serious penalties, including criminal prosecution.  We may also lose our rental license and be subject to administrative fines, restrictions, or other penalties. All of these harsh penalties may be imposed on us without any written notice from the City of Minneapolis.

Leanna Stefaniak

Date:  September _3_, 2020