# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 301, 712, 2103 AND 3151 LLC; 12 TWENTY-SECOND AND 1827 LASALLE LLC; 137 EAST SEVENTEENTH STREET LLC; 1522 LASALLE AVENUE LLC; 1728 SECOND AVENUE AND 1801 THIRD AVENUE LLC; 1806 AND 1810 THIRD AVENUE LLC; 1816, 1820 AND 1830 STEVENS AVENUE LLC; 1817 SECOND AVENUE LLC; 1900 AND 1906 CLINTON AVENUE LLC; 1924 STEVENS AVENUE LLC; 2020 NICOLLET AVENUE LLC; 2101 THIRD AVENUE LLC; 2323 AND 2401 CLINTON AVENUE LLC; 2417, 2423 AND 2439 BLAISDELL AVENUE LLC; 2427 BLAISDELL AND 2432 FIRST AVENUE LLC; 25 TWENTY-FIFTH STREET LLC; 2535 CLINTON AVENUE LLC; 2545 BLAISDELL AVENUE LLC; 2609 HENNEPIN AVENUE LLC; 2633 PLEASANT AVENUE LLC; 2720 PILLSBURY AVENUE LLC; 2738 AND 2750 PILLSBURY AVENUE LLC; 2809 PLEASANT AVENUE LLC; 600 FRANKLIN AVENUE LLC; AMY SMITH; BLAISDELL 3322, LLC; BLOOMINGTON 4035, LLC; BRYANT AVENUE PROPERTIES LLC; COLFAX APARTMENTS LLC;  DUPONT PROPERTIES LLC; FLETCHER PROPERTIES, INC.; FRANKLIN VILLA PARTNERSHIP, L.L.P.; FREMONT APARTMENTS, LLC; FREMONT TERRACE APARTMENTS, L.L.C.; GARFIELD COURT PARTNERSHIP, L.L.P.; GASPARRE NEW BOSTON SQUARE, LLC; GATEWAY REAL ESTATE, L.L.C.; JEC PROPERTIES, LLC; LAGOON APARTMENTS, LLC; LL LLC; | CIVIL ACTION NO. 20-cv-1904 (PAM/BRT)<br><br>**DECLARATION OF THOMAS FLETCHER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

NORTHERN GOPHER ENTERPRISES,
INC.; PATRICIA L. FLETCHER, INC.; and
RAY PETERSON,

                          Plaintiffs,

v.

CITY OF MINNEAPOLIS,

                          Defendant.

I, Thomas Fletcher, hereby declare as follows:

1.    I am a resident of Minnesota and I own and/or co-own and operate thirty-nine (39) residential dwelling units located at 1316 25-1/2 Street West, 1605 Hennepin Avenue, 2524 Hennepin Avenue, and 2736 Hennepin Avenue in Minneapolis, Minnesota.

2.    I am personally responsible for screening potential tenants who seek to rent a residential unit in one of my properties.

3.    Leasing my property is an act that comes with serious risks. It involves the demise of my own interest in my property and grants a tenant the exclusive right to possess my property during the term of the tenancy.

4.    A tenant who is in exclusive possession of my property may significantly damage the premises, which is time-consuming and expensive to remediate. The costs of remediating this damage often far exceeds the amount of any security deposits. Tenants may also be antisocial, unstable, dishonest, or disruptive, and they may pose a danger to other tenants' and management or building maintenance staff's personal safety and quiet

enjoyment of the property and may result in other tenants giving notice to vacate their apartments.

5. A proceeding to evict this type of tenant can be time consuming and extremely costly, and may even require engaging legal counsel, given the nature of a lease and rights afforded residential tenants. An eviction of one tenant can cost me several thousand dollars in costs and fees, not including the time and attention necessary to see the process through.

6. During the eviction process, tenants remain in the property and, therefore, remain a threat to the safety of other tenants and management and maintenance personnel and continue their disruptive conduct. Repeated dispatches of the police may result in the revocation of my rental license, even though I am merely attempting to evict a troublesome tenant.

7. Moreover, further damage to the premises can occur and unpaid rents continue to mount during the eviction process.

8. I also have a duty to address and prevent instances of disruptive criminal and nuisance conduct in my rental properties, and may be subject to civil liability for the conduct of my tenants.

9. I therefore take great care to create and implement screening policies and procedures to limit these risks and ensure to the best of my ability that I am excluding those individuals who will not uphold a safe, comfortable, and crime-free living environment.

10. I utilize predictive factors that are objectively applied to qualify potential tenants.

11. Specifically, I look at an applicant's criminal background check, credit report, rental history, and income to determine using my best objective judgment whether that applicant will very likely make a successful tenant for my property.

12. As an owner of residential dwelling units in Minneapolis, I am subject to Minneapolis Ordinance No. 244.2030 (the "Ordinance").

13. I am extremely concerned about how the Ordinance will affect my rental properties and my business.

14. Given the number of units I own and operate, I intend to conduct individualized assessments of each applicant that applies for one of my units.

15. Conducting an individualized assessment pursuant to the Ordinance will be extremely time consuming, onerous, and inefficient. It may also subject me to a fair housing challenge.

16. I must accept and consider all supplemental evidence or documentation provided with each application that may explain, justify, or negate the relevance of any potentially negative information identified on the applicant's criminal background check, credit report, rental history, and income verification. This requires me to carefully review and consider any written information submitted by the applicant that the applicant deems is relevant to my decision.

17. Moreover, I must look at this information through the lens of the City of Minneapolis, as opposed to evaluating what I deem important for my rental decision for

4

my property. Indeed, the City of Minneapolis has mandated that I look at the nature and severity of incidents, the number and type of incidents, the time that has elapsed since the date of any incidents, and the age of the applicant at the time the incident occurred. For one applicant, I might otherwise feel that the severity of the incident is more important to me than the time that has elapsed since that incident. For another applicant, I might otherwise feel that the time that has elapsed since that incident is more important to me than the age of the applicant when it occurred.

18. I am required, in essence, to conduct a mini-hearing or mini-parole board evaluation of each and every applicant's past to determine whether they would be a suitable tenant for my unit.

19. Should I choose to deny an applicant, I must undertake the expense of providing a written notice to every applicant within 14 days of my decision not to rent to that applicant, and each notice must explain the basis for the denial, list all supplemental information I considered, and explain each of the reasons that the supplemental information did not adequately compensate for the factors that informed my decision not to rent to the applicant.

20. The denial will need to be carefully, appropriately, and legally crafted. This will mean devoting significant time and attention, including the cost of hiring legal counsel, to properly evaluate and prepare rejections of certain applicants.

21. I must also review and consider this information through the lens the City of Minneapolis has deemed appropriate without any true guidance from the Ordinance or the City.

22. If an applicant appeals my denial to the City of Minneapolis, I will be required to engage in a time extensive and costly review process and will likely need to hire legal counsel to represent me throughout this process.

23. I am concerned that if I do not fully comply with the Ordinance, I will be subject to serious penalties, including criminal prosecution. I may also lose my rental license and be subject to administrative fines, restrictions, or other penalties. All of these harsh penalties may be imposed on me without any written notice from the City of Minneapolis.

_____
Thomas Fletcher

Date: September 4, 2020