IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 301, 712, 2103 AND 3151 LLC; 12 TWENTY-SECOND AND 1827 LASALLE LLC; 137 EAST SEVENTEENTH STREET LLC; 1522 LASALLE AVENUE LLC; 1728 SECOND AVENUE AND 1801 THIRD AVENUE LLC; 1806 AND 1810 THIRD AVENUE LLC; 1816, 1820 AND 1830 STEVENS AVENUE LLC; 1817 SECOND AVENUE LLC; 1900 AND 1906 CLINTON AVENUE LLC; 1924 STEVENS AVENUE LLC; 2020 NICOLLET AVENUE LLC; 2101 THIRD AVENUE LLC; 2323 AND 2401 CLINTON AVENUE LLC; 2417, 2423 AND 2439 BLAISDELL AVENUE LLC; 2427 BLAISDELL AND 2432 FIRST AVENUE LLC; 25 TWENTY-FIFTH STREET LLC; 2535 CLINTON AVENUE LLC; 2545 BLAISDELL AVENUE LLC; 2609 HENNEPIN AVENUE LLC; 2633 PLEASANT AVENUE LLC; 2720 PILLSBURY AVENUE LLC; 2738 AND 2750 PILLSBURY AVENUE LLC; 2809 PLEASANT AVENUE LLC; 600 FRANKLIN AVENUE LLC; AMY SMITH; BLAISDELL 3322, LLC; BLOOMINGTON 4035, LLC; BRYANT AVENUE PROPERTIES LLC; COLFAX APARTMENTS LLC;  DUPONT PROPERTIES LLC; FLETCHER PROPERTIES, INC.; FRANKLIN VILLA PARTNERSHIP, L.L.P.; FREMONT APARTMENTS, LLC; FREMONT TERRACE APARTMENTS, L.L.C.; GARFIELD COURT PARTNERSHIP, L.L.P.; GASPARRE NEW BOSTON SQUARE, LLC; GATEWAY REAL ESTATE, L.L.C.; JEC PROPERTIES, LLC; LAGOON APARTMENTS, LLC; LL LLC; | CIVIL ACTION NO. 20-cv-1904 (PAM/BRT)<br><br>**DECLARATION OF JAMES R. RUBIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

NORTHERN GOPHER ENTERPRISES,
INC.; PATRICIA L. FLETCHER, INC.; and
RAY PETERSON,

                Plaintiffs,

v.

CITY OF MINNEAPOLIS,

                Defendant.

I, James R. Rubin, hereby declare as follows:

1. I am the sole member of 301, 712, 2103 and 3151 LLC, a Minnesota limited liability company, that owns one hundred and three (103) residential rental units located at 2103 Pleasant Avenue, 22 22nd Street East, and 301 22nd Street West in Minneapolis, Minnesota.

2. I am the sole member of 12 Twenty-Second and 1827 LaSalle LLC, a Minnesota limited liability company, that owns sixty-seven (67) residential rental units located at 12 22nd Street West and 1827 LaSalle Avenue in Minneapolis, Minnesota.

3. I am the sole member of 137 East Seventeenth Street LLC, a Minnesota limited liability company, that owns forty-six (46) residential rental units located at 2731 and 2741 Pillsbury Avenue South in Minneapolis, Minnesota.

4. I am the sole member of 1522 LaSalle Avenue LLC, a Minnesota limited liability company, that owns thirty (30) residential rental units located at 1522 LaSalle Avenue in Minneapolis, Minnesota.

5. I am the sole member of 1728 Second Avenue and 1801 Third Avenue LLC, a Minnesota limited liability company, that owns forty-nine (49) residential rental units located at 1703 and 1728 Second Avenue South and 1801 Third Avenue South in Minneapolis, Minnesota.

6. I am the sole member of 1806 and 1810 Third Avenue LLC, a Minnesota limited liability company, that owns sixty-eight (68) residential rental units located at 1714 Second Avenue South and 1806 and 1810 Third Avenue South in Minneapolis, Minnesota.

7. I am the sole member of 1816, 1820 and 1830 Stevens Avenue LLC, a Minnesota limited liability company, that owns one hundred and nine (109) residential rental units located at 1816, 1820 and 1830 Stevens Avenue in Minneapolis, Minnesota.

8. I am the sole member of 1817 Second Avenue LLC, a Minnesota limited liability company, that owns seventy (70) residential rental units located at 1817 Second Avenue South in Minneapolis, Minnesota.

9. I am the sole member of 1900 and 1906 Clinton Avenue LLC, a Minnesota limited liability company, that owns fifty-two (52) residential rental units located at 1900 and 1906 Clinton Avenue and 1915 and 1921 Third Avenue South in Minneapolis, Minnesota.

10. I am the sole member of 1924 Stevens Avenue LLC, a Minnesota limited liability company, that owns thirty-five (35) residential rental units located at 1924 Stevens Avenue and 1812 First Avenue South in Minneapolis, Minnesota.

11.     I am the sole member of 2020 Nicollet Avenue LLC, a Minnesota limited liability company, that owns ninety-three (93) residential rental units and two (2) commercial units located at 2020 Nicollet Avenue South in Minneapolis, Minnesota.

12.     I am the sole member of 2101 Third Avenue LLC, a Minnesota limited liability company, that owns fifty-two (52) residential rental units located at 2011 Second Avenue South and 2101 and 2115 Third Avenue South and 2424 and 2428 Fourth Avenue South in Minneapolis, Minnesota.

13.     I am the sole member of 2323 and 2401 Clinton Avenue LLC, a Minnesota limited liability company, that owns thirty-nine (39) residential rental units located at 2323 and 2401 Clinton Avenue South in Minneapolis, Minnesota.

14.     I am the sole member of 2417, 2423 and 2439 Blaisdell Avenue LLC, a Minnesota limited liability company, that owns twenty-six (26) residential rental units located at 2417, 2423 and 2439 Blaisdell Avenue in Minneapolis, Minnesota.

15.     I am the sole member of 2427 Blaisdell and 2432 First Avenue LLC, a Minnesota limited liability company, that owns fifty-four (54) residential rental units located at 2427 and 2431 Blaisdell Avenue South and 2432 First Avenue South in Minneapolis, Minnesota.

16.     I am the sole member of 25 Twenty-Fifth Street LLC, a Minnesota limited liability company, that owns twenty-four (24) residential rental units located at 25 25th Street East in Minneapolis, Minnesota.

17.   I am the sole member of 2535 Clinton Avenue LLC, a Minnesota limited liability company, that owns seventy (70) residential rental units located at 2535 Clinton Avenue South and 2625 and 2632 Third Avenue South in Minneapolis, Minnesota.

18.   I am the sole member of 2545 Blaisdell Avenue LLC, a Minnesota limited liability company, that owns sixty-one (61) residential rental units located at 2541, 2545, 2740 and 2804 Blaisdell Avenue in Minneapolis, Minnesota.

19.   I am the sole member of 2609 Hennepin Avenue LLC, a Minnesota limited liability company, that owns twenty-six (26) residential rental units located at 2609 Hennepin Avenue and 2652 Bryant Avenue South in Minneapolis, Minnesota

20.   I am the sole member of 2633 Pleasant Avenue LLC, a Minnesota limited liability company, that owns forty-seven (47) residential rental units located at 2633 and 2740 Pleasant Avenue and 2800 Pillsbury Avenue in Minneapolis, Minnesota.

21.   I am the sole member of 2720 Pillsbury Avenue LLC, a Minnesota limited liability company, that owns sixteen (16) residential rental units located at 2720 Pillsbury Avenue in Minneapolis, Minnesota.

22.   I am the sole member of 2738 and 2750 Pillsbury Avenue LLC, a Minnesota limited liability company, that owns thirty-six (36) residential rental units located at 2738 and 2750 Pillsbury Avenue in Minneapolis, Minnesota.

23.   I am the sole member of 2809 Pleasant Avenue LLC, a Minnesota limited liability company, that owns twenty-one (21) residential rental units located at 2809 Pleasant Avenue in Minneapolis, Minnesota.

24. I am the sole member of 600 Franklin Avenue LLC, a Minnesota limited liability company, that owns twenty-nine (29) residential rental units located at 600 Franklin Avenue West in Minneapolis, Minnesota.

25. I, or my managing agent, am responsible for screening potential tenants who seek to rent a residential unit in one of my properties.

26. Leasing my property is an act that comes with serious risks. It involves the demise of my own interest in my property and grants a tenant the exclusive right to possess my property during the term of the tenancy. It is, therefore, critical to rent to tenants who can and will honor the terms of their lease.

27. A tenant who is in exclusive possession of my property may significantly damage the premises, which is time-consuming and expensive to remediate. The costs of remediating this damage often far exceeds the amount of any security deposits.

28. Tenants may also be unstable, dishonest, or disruptive, and they may pose a danger to other tenants' and management or building maintenance staff's personal safety and quiet enjoyment of the property.

29. Often without anywhere else to live, defaulting or disruptive tenants refuse to vacate the premises. Extended defaults deprive me of income from the property and expose me to legal costs while my obligations under my financing continue.

30. A proceeding to evict this type of tenant can be time consuming and extremely costly, and may even require engaging legal counsel, given the nature of a lease and rights afforded residential tenants. An eviction of one (1) tenant can cost me several

thousand dollars in costs and fees, not including the time and attention necessary to see the process through.

31. In my experience, when I have pursued an eviction, tenants remain in the property, causing unpaid rents to continue to mount, the possibility of further damage to the premises, and the possibility of displacement of other tenants during the eviction process. I rarely recover unpaid rents or reimbursement of damage caused to the property. It is generally extremely difficult to collect on a judgment against an evicted tenant.

32. Repeated tenant defaults, evictions, and damage to the premises can, therefore, be financially devastating.

33. I may be held liable for or have to address conditions tenants create on my property. Specifically, I have a duty to address and prevent instances of disruptive criminal and nuisance conduct in my rental properties. This type of behavior in my properties can lead to fines and punishment from the City.

34. I therefore take great care to create and implement screening policies and procedures to limit these risks and ensure that I am excluding those individuals who will not uphold a safe, comfortable, and crime-free living environment.

35. I utilize a matrix of predictive factors that are objectively applied to qualify potential tenants.

36. Specifically, I utilize a third-party screening service to objectively gather an applicant's criminal background check, credit report, rental history, and income. I use this information to determine whether that applicant will make a successful tenant for my property.

37. As an owner of residential dwelling units in Minneapolis, I am subject to Minneapolis Ordinance No. 244.2030 (the "Ordinance").

38. The Ordinance has changed the way I screen applicants in several critical respects, and I am extremely concerned about how those changes will affect my rental properties and my business.

39. As noted above, I obtain a criminal background check on all applicants to locate any prior criminal convictions the applicant may have.

40. Prior to the Ordinance, if a criminal background check showed that an applicant was convicted of a crime, I would evaluate the severity of the crime, the amount of time since the crime occurred, the amount of time since release from any custodial sentence, and the history of recidivism, including whether the applicant committed multiple lower level crimes in a short period of time, in accordance with set guidelines, to determine whether to rent to that applicant. I would reject an applicant with a criminal record inconsistent with my screening criteria.

41. In my experience, prior criminal conduct can be predictive of disruptive conduct or the lack of stability necessary to meet ongoing lease obligations.

42. Rejections were made out of concern for the safety of other tenants and employees, and because a criminal record is an indicator of the likelihood of lease compliance – safe and quiet enjoyment of the premises, taking care of the leased premises, timely payment of rent, and allowing other tenants to enjoy their units and common spaces.

8

43. Under the Ordinance, I have had to change those set guidelines to allow for approvals of applicants who have committed serious crimes and been sentenced for those crimes more recently in time.

44. For example, prior to the Ordinance, if an applicant's criminal background check showed that the applicant was convicted of a felony for a serious offense against a person, such as homicide, manslaughter, kidnapping, or assault, I would only rent to that applicant if he or she had been released from prison eight (8) or more years prior to the application. Under the Ordinance, however, I must rent to that applicant if that individual was sentenced for that crime as recent as ten (10) years prior to the application, regardless of how recently he or she was released from prison.

45. By way of another example, prior to the Ordinance, if an applicant's criminal background check showed that the applicant was convicted of a felony for rape, I would only rent to that applicant if he or she was released from prison eight (8) or more years prior to the application and he or she was no longer on any national sex offender registry. Under the Ordinance, however, I must rent to that applicant if that individual was sentenced for that crime as recent as seven (7) years prior to the application or if he or she is only on a ten-year sex offender registry and not a lifetime registry.

46. Prior to the Ordinance, if an applicant's criminal background check showed that the applicant was convicted of a misdemeanor for a sex crime, including sexual assault or soliciting a prostitute, I would only rent to that applicant if he or she had been released from prison or jail three (3) or more years prior to the application and he or she was no longer on any national sex offender registry. Under the Ordinance, however, I must rent

9

to that applicant if that individual was sentenced for that crime as recent as three (3) years prior to the application.

47.     Furthermore, prior to the Ordinance, if an applicant's criminal background check showed that the applicant was convicted of three (3) or more misdemeanors within the past five (5) years of a type that involved harm to person or property, I would deny that applicant.  Under the Ordinance, however, I must rent to that applicant, as long as that individual was sentenced for all of those misdemeanors at least three (3) years prior to the application.

48.     Renting to individuals with these types of serious criminal records is extremely concerning for me and my employees.  It puts my other tenants and my employees in danger and makes it more difficult for me to prevent the commission of crimes or other concerning behaviors on my property.

49.     I also run a credit history report on applicants.  I obtain a credit report from a third-party agency that includes a credit score calculated through analytics validated to be predictive of consumers' likelihood of defaulting on their obligations.

50.     I rely on these credit scores, as well as other results of the credit report, in my overall evaluation of the applicant.

51.     Prior to the Ordinance, if the credit history report showed that the applicant had a score at or above 600, the applicant would not be denied based on credit history.  If the applicant had a score below 600 for reasons other than medical debt or student loan debt, I would often obtain an additional security deposit to ameliorate any potential financial risk in renting to that applicant.

52. Under the Ordinance, however, I can no longer reject an applicant for a low credit score or insufficient credit history. This requires me to accept an applicant to rent a unit with less confidence that the applicant will be able to pay his or her rent.

53. To make matters worse, I cannot collect an additional security deposit from that tenant to cover this risk. Because I cannot cover this risk, I have to deny tenants with credit scores I may have otherwise accepted. This results not only in my unit not being rented, but in that applicant losing out on a housing opportunity.

54. I also run a rental history search on applicants to determine whether the applicant has any prior evictions or anything else on his or her record that would be concerning to me, such as damaging the premises or posing a threat to other tenants, management, maintenance, employees, and/or tenants' quiet enjoyment of their residences.

55. I do so because successful prior tenancy is probative of future success as a tenant in one of my units – safe and quiet enjoyment of the premises, taking care of the leased premises, and timely payment of rent.

56. Prior to the Ordinance, if an applicant had negative references or a history of evictions on his or her record, the applicant was denied. Specifically, the applicant would be denied if he or she had an eviction with a writ or judgment (unsettled) within the past five (5) years, had any money due to a prior landlord, or had a lease violation regarding police calls, noise violations, unauthorized residents, or other livability issues. If the applicant had an eviction only for unpaid rent and not for other livability issues, I would obtain an additional security deposit to ameliorate any potential financial risk in renting to that applicant.

57. Under the Ordinance, however, I can no longer reject an applicant for certain information obtained in the rental history search. If an applicant has an eviction greater than one (1) year old and there was no judgment or recovery issued, I must rent to that applicant. If an applicant has an eviction greater than three (3) years old, I must rent to that applicant.

58. To make matters worse, I cannot collect an additional security deposit from that tenant to cover this risk. Because I cannot cover this risk, I have to deny tenants with rental histories I may have otherwise accepted. This results not only in my unit not being rented, but in that applicant losing out on a housing opportunity.

59. Finally, I seek information about the applicant's income, as that information determines whether the applicant would be able to afford the required rent payment and is often a reason a tenant stops paying rent. Individuals not infrequently desire an apartment beyond their means, cannot control their finances, or suffer adverse financial circumstances during the lease. In those circumstances, they default or are repeatedly delinquent in meeting their lease payments.

60. The cumulative effect of these prohibitions severely cripples my ability to screen applicants in order to avoid housing problem tenants in my properties. It forces me to lease to tenants presenting a higher risk to other tenants, to tenants who may cause damage to my property, and to tenants who may default on their rent obligations.

61. I am similarly concerned that compliance with the Ordinance will cause me to increase the rents I charge for my properties and/or force me to cut costs in areas where I should be investing, such as hiring and payroll, employee benefits, capital expenditures,

or preventative maintenance. I believe that being forced to rent to individuals with a serious criminal history, low or no credit score, poor rental history, and/or low income will lead to, among other things, higher default rate, reduced revenue, increased property damage, increased costs, safety concerns for other tenants and employees, and fines and other penalties from the City. In my experience, one problematic tenant can lead to the demise of an entire rental property.

62. Given the number of properties and units I own, it is not feasible for me to conduct an individualized assessment of every individual who applies to rent a unit in my properties.

63. An individualized assessment would be extremely time consuming, onerous, expensive, and inefficient to review supplemental information and evidence for hundreds of potential tenants. I would be required, in essence, to conduct a mini-hearing or mini-parole board evaluation of each and every applicant's past to determine whether they would be a suitable tenant for my unit. I am also concerned that performing an individualized assessment of applicants will lead to fair housing challenges and lawsuits.

64. I am concerned that if I do not fully comply with the Ordinance, I will be subject to serious penalties, including criminal prosecution. I may also lose my rental license and be subject to administrative fines, restrictions, or other penalties. All of these harsh penalties may be imposed on me without any written notice from the City of Minneapolis.

[SIGNATURE ON FOLLOWING PAGE]

_____
James R. Rubin

Date: September 8, 2020