UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 301, 712, 2103 and 3151 LLC; 12 Twenty-Second and 1827 LaSalle LLC; 137 East Seventeenth Street LLC; 1522 LaSalle Avenue LLC; 1728 Second Avenue and 1801 Third Avenue LLC; 1806 and 1810 Third Avenue LLC; 1816, 1820 and 1830 Stevens Avenue LLC; 1817 Second Avenue LLC; 1900 and 1906 Clinton Avenue LLC; 1924 Stevens Avenue LLC; 2020 Nicollet Avenue LLC; 2101 Third Avenue LLC; 2323 and 2401 Clinton Avenue LLC; 2417, 2423 and 2439 Blaisdell Avenue LLC; 2427 Blaisdell and 2432 First Avenue LLC; 25 Twenty-Fifth Street LLC; 2535 Clinton Avenue LLC; 2545 Blaisdell Avenue LLC; 2609 Hennepin Avenue LLC; 2633 Pleasant Avenue LLC; 2720 Pillsbury Avenue LLC; 2738 and 2750 Pillsbury Avenue LLC; 2809 Pleasant Avenue LLC; 600 Franklin Avenue LLC; Amy Smith; Blaisdell 3322, LLC; Bloomington 4035, LLC; Bryant Avenue Properties LLC; Colfax Apartments LLC; Dupont Properties LLC; Fletcher Properties, Inc.; Franklin Villa Partnership, L.L.P.; Fremont Apartments, LLC; Freemont Terrace Apartments, L.L.C.; Garfield Court Partnership, L.L.P.; Gasparre New Boston Square, LLC; Gateway Real Estate, L.L.C.; JEC Properties, LLC; Lagoon Apartments, LLC; LL LLC; Northern Gopher Enterprises, Inc.; Patricia L. Fletcher, Inc.; and Ray Peterson; | Civ. No. 20-1904 (PAM/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| City of Minneapolis, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. For the following reasons, the Motion is denied.

**BACKGROUND**

In September 2019, the Minneapolis City Council enacted the Minneapolis Fair Chance Housing Ordinance, Minneapolis City Ordinance § 244.2030. The ordinance provides that landlords in the City must provide prospective renters with "the landlord's rental screening criteria in as much detail as feasible." Id. § 244.2030(b). And, as relevant to this matter, the ordinance prescribes two alternatives for landlords to use when screening potential tenants.

The first alternative, set forth in subdivision (c), prohibits landlords from considering factors such as vacated or expunged convictions, id. § 244.2030(c)(1)(c); misdemeanor convictions for which the date of sentencing is more than three years old, id. § 244.2030(c)(1)(f), and certain felony convictions for which the dates of sentencing are more than a certain number of years old, id. § 244.2030(c)(1)(g)-(h). The subsection also provides that a landlord cannot decline to rent to a tenant solely because of that tenant's credit score, although the landlord can consider "information within a credit report directly relevant to fitness as a tenant . . . ." Id. § 244.2030(c)(2)(a). Finally, the subsection prohibits landlords from considering certain rental history and from refusing to rent to individuals with income less than three times the rent if the prospective tenant "can demonstrate a history of successful rent payment with an income less than three (3) times the rent." Id. § 244.2030(c)(3)(c).

The second alternative allows a landlord to "appl[y] screening criteria that are more prohibitive than the inclusive screening criteria set forth in subdivision (c)." Id. § 244.2030(d). To do so, however, the landlord must conduct an "individualized assessment for any basis upon which the landlord intends to deny an application." Id. This individualized assessment requires the landlord to "accept and consider all supplemental evidence provided with a completed application to explain, justify, or negate the relevance of potentially negative information revealed by screening." Id. The subsection also requires the landlord to consider several factors, including the nature and severity and the number and type of the incidents that would lead to a denial, the time elapsed since those incidents, and the age of the prospective tenant at the time of the incidents. Id.

Finally, the ordinance mandates that landlords set forth their denials in writing within 14 days, specifically identifying the criteria on which the applicant was denied. Id. § 244.2030(e). If the denial is based on the applicant's criminal history, the ordinance requires the landlord to "consider supplemental evidence provided by the applicant if provided at the time of application submittal." Id. § 244.2030(e)(1). If the landlord instead conducts an individualized assessment under subsection (d), the landlord is required to include in the denial the supplemental evidence considered, if any, "and an explanation of the reasons that the supplemental evidence did not adequately compensate for the factors that informed the landlord's decision to reject the application." Id. § 244.2030(e)(2).

A violation of the ordinance is punishable by a fine, adverse rental license action, and criminal prosecution. Id. § 244.2030(g). Prior notice is not required to enforce a violation, and tenants "may seek redress in any court of competent jurisdiction" to enforce

the ordinance. Id. The ordinance became effective in June 2020 for rental properties of more than 15 units and will take effect as to smaller properties in December 2020.

Plaintiffs are 43 rental property owners in the City of Minneapolis. They filed this lawsuit in September 2020, nearly a year after the ordinance's enactment, contending that the ordinance violates their rights under the United States and Minnesota Constitutions. Specifically, they claim that the ordinance operates as a taking, deprives them of their right to substantive due process, constitutes compelled speech in violation of the First Amendment, and is void for vagueness. They seek a preliminary injunction for the alleged violations of the Takings Clause, substantive due process, and the vagueness doctrine, although their reply memorandum very briefly argues their First Amendment claim.

**DISCUSSION**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue a preliminary injunction, courts consider four factors: "(1) the threat of irreparable harm to the movant;" (2) the balance of harm the injunction would have on the movant and the opposing party; "(3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor is dispositive, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013) (quotation omitted).

**A.      Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits of their claims, Plaintiffs must establish that they have a "fair chance of prevailing" on those claims. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F3d 724, 732 (8th Cir. 2008) (en banc). This standard does not require "the party seeking relief [to] show 'a greater than fifty per cent likelihood that [it] will prevail on the merits.'" Id. at 731 (quoting Dataphase, 640 F.2d at 113). And if the other three factors "strongly favor[] the moving party," then "a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase, 640 F.2d at 113.

**1.      Takings**

Both the federal and Minnesota Constitutions prohibit the government from taking property "for public use, without just compensation." U.S. Const. Amend. V; see also Minn. Const. Art. I, § 13. "[G]overnment regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005). However, "government regulation—by definition—involves the adjustment of rights for the public good." Andrus v. Allard, 444 U.S. 51, 65 (1979).

Plaintiffs contend that the ordinance constitutes a per se taking. The Supreme Court has "stake[d] out two categories of regulatory action that generally will be deemed per se takings for Fifth Amendment purposes." Lingle, 533 U.S. at 538. The first category involves a "permanent physical invasion" of property, no matter how minor. Id. The second "applies to regulations that completely deprive an owner of 'all economically

5

beneficial us[e]' of her property." Id. (quoting Lucas v. S. C. Coastal Council, 505 U.S. 1003 1019 (1992) (emphasis in Lucas)).

The ordinance in question does not deprive Plaintiffs of all economically beneficial use of their properties, nor despite Plaintiffs' argument is it a permanent physical invasion of their property. See Iowa Assur. Corp. v. City of Indianola, 650 F.3d 1094, 1098 (8th Cir. 2011) (describing physical-invasion takings). Plaintiffs contend that the ordinance interferes with their right to exclude others, which they note is "perhaps the most fundamental of all property interests." Lingle, 544 U.S. at 539. But a per se taking is something that "eviscerates the owner's right to exclude others from entering and using her property," id., not something that merely defines criteria she may, but is not required to, use to determine who may rent the property.

Kaiser Aetna v. United States, 444, U.S. 164 (1979), on which Plaintiffs rely almost exclusively, is not to the contrary. In that case, the lessee of a private pond created a channel between the pond and the adjacent ocean. Id. at 167. Many years later, the federal government determined that the channel had turned the pond into a "navigable water" from which the public could not be excluded. Id. at 168. The Supreme Court held that this governmental action was a taking that could not be accomplished without compensation to the pond's owner. Id. at 180. In the Court's words, "the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation." Id. at 179-80.

Despite Plaintiffs' statements, this is not a case in which the Minneapolis City Council has forced them to open their rental properties to the public, as in Kaiser Aetna.

The ordinance gives Plaintiffs two alternatives when choosing tenants: one alternative does not allow for the consideration of certain factors, and the other allows consideration of any factor the landlord deems relevant as long as the landlord individually assesses the prospective tenant and provides an explanation of the refusal to rent to that tenant. This is not "an actual physical invasion of the privately owned [property]" found to be a taking in Kaiser Aetna. Id. at 180.

Plaintiffs did not rely on the Penn Central factors as support for the injunction they seek.[1] Penn Cent. Trans. Co. v. New York City, 438 U.S. 104 (1978). Rather, Plaintiffs insist that because the ordinance interferes with their alleged fundamental right to exclude others from their property, it is a per se taking. But as discussed above, the ordinance is not a per se taking and thus the Court must examine the ordinance's economic effect and the extent of the interference with Plaintiffs' property rights. Lingle, 544 U.S. at 540 (describing Penn Central factors).

Plaintiffs offer no evidence in support of their asserted economic harm. The declarations submitted in support of the Motion contain general concerns and worries but offer no specifics to support these general statements. (See., e.g., Smith Decl. (Docket No. 52) ¶ 15 (stating that compliance with the ordinance will be "time consuming, onerous, and difficult").) The declarants do not describe whether, in the months since the ordinance's effective date, prospective tenants have submitted voluminous additional materials that

---

[1] The Court generally "will not consider arguments raised for the first time in a reply brief." Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006).

Plaintiffs were required to review. Nor do the declarations contain any indication that the third-party screening services some Plaintiffs use (e.g., Rubin Decl. ¶ 36) now charge Plaintiffs more for their services because of the ordinance's requirements.

While the Court shares Plaintiffs' concern about the potential financial impact of this ordinance, the Court cannot grant an injunction based on speculation. It is Plaintiffs' burden to establish that they are likely to succeed on the merits of their claims. They have not sufficiently demonstrated that the ordinance interferes with their "distinct investment-backed expectations" to such an extent as to constitute a taking under Penn Central. Penn Cent., 438 U.S. at 124. Plaintiffs have thus failed to establish that they are likely to succeed on the merits of their takings claim.

**2.   Substantive Due Process**

Plaintiffs next argue that the ordinance is unconstitutional because it deprives them of a fundamental right without due process. As a result, Plaintiffs contend that the regulation must pass strict scrutiny: it must be narrowly tailored to serve a compelling governmental interest. But even if Plaintiffs are correct that the ordinance interferes with their right to rent to whomever they choose, Plaintiffs provide no legal authority recognizing that right as a fundamental right for purposes of a substantive-due-process analysis.

Fundamental rights, for purposes of the Due Process Clause, are those rights "objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997). Although there appear to be no Eighth Circuit cases directly on point, Minnesota state courts have noted that "neither Minnesota nor the

8

nation overall has a history of recognizing the right to rent property as a fundamental right." Fletcher Props., Inc. v. City of Minneapolis, 931 N.W.2d 410, 419 (Minn. Ct. App. 2019).[2] Moreover, "[t]he list of liberty interests and fundamental rights is short, and the Supreme Court has expressed very little interest in expanding it." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 860 (6th Cir. 2012). Thus, there is "no support for the proposition that a citizen has a fundamental right or liberty interest in renting their property." Hills Developers, Inc. v. City of Florence, No. 15cv175, 2017 WL 1027586, at *7 (E.D. Ky. Mar. 16, 2017); see also Longacre v. W. Sound Util. Dist., No. C16-5122, 2016 WL 3186855, at *2 (W.D. Wash. June 8, 2016) ("Plaintiff offers no legal authority suggesting that his right to use, rent, or sell his property as he chooses is a fundamental property right subject to constitutional protection.").

Absent the deprivation of a fundamental right, the ordinance need only be rationally related to a legitimate government interest to comply with the Constitution. F.C.C. v Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") Although Plaintiffs briefly argue that the ordinance is not rationally related to any legitimate interest, it is not for the Court

---

[2] Some of the plaintiffs in the Fletcher case are Plaintiffs here. Fletcher challenged a Minneapolis ordinance that prohibited landlords from taking a tenant's qualification for Section 8 housing into account in rental decisions, although the Fletcher plaintiffs raised claims only under the Minnesota Constitution. Both the Minnesota Court of Appeals and Supreme Court upheld the ordinance's validity. Fletcher Props., Inc. v. City of Minneapolis, 947 N.W.2d 1 (Minn. 2020).

to second-guess the Minneapolis City Council in this regard.  See id. at 315 (finding that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data").

The ordinance in question has a long list of "findings and purpose," including the City Council's concern about the lack of affordable rental housing in the city, the effect of factors such as prior convictions on an individual's ability to secure housing, and the impact lack of housing has on recidivism rates.  Minneapolis City Ordinance § 244.2030(a). Ensuring that its citizens have access to affordable housing is undoubtedly a legitimate governmental objective, and the ordinance is directed at ameliorating problems that often prevent people from finding housing.  Plaintiffs may be correct that the ordinance will ultimately reduce affordable rental housing in the city, and the Court has doubts about whether the ordinance will serve the purposes the City Council intends.  At this stage, however, the Court must defer to the City Council and its comprehensive findings in this regard.

Plaintiffs have not demonstrated that they are likely to succeed on the merits of their substantive-due-process claim.

### 3. Vagueness

Plaintiffs contend that a preliminary injunction is warranted because the ordinance is void for vagueness:  it does not set forth with sufficient detail what it proscribes.  The City pointed out that Plaintiffs' facial challenge to the ordinance did not rely on the First Amendment, which is the only basis on which to facially attack an ordinance.  See Gallagher v. City of Clayton, 699 F.3d 1013, 1021-22 (8th Cir. 2012) ("It is well

established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts at hand. In these cases, the statute is judged on an as-applied basis.") (quotations omitted). Plaintiffs respond that they raise a First Amendment claim in their Complaint. But Plaintiffs offered no argument in either of their memoranda regarding this First Amendment challenge and indeed specifically denied relying on the First Amendment claim for their preliminary-injunction request. (Pls.' Supp. Mem. (Docket No. 51) at 13 n.3.) Moreover, their void-for-vagueness claim invokes due process, not the First Amendment. (See Compl. ¶¶ 217-26 (stating Count Four as claiming "Due Process – Void for Vagueness").)

It is Plaintiffs' burden to establish that they are likely to succeed on their claims, and having failed to argue the First Amendment as support for their void-for-vagueness claim, the Court will not construct this argument for them. As the City contends, Plaintiffs' void-for-vagueness challenge, at least as stated in their Complaint and in their supporting memorandum, can succeed only as an as-applied challenge. Plaintiffs make no argument that the ordinance is invalid as applied. They have not established that they are likely to succeed on their void-for-vagueness claim.

**B.      Irreparable Harm**

Plaintiffs argue that they will suffer irreparable harm if an injunction does not issue because the ordinance violates their fundamental constitutional rights. But as discussed above, Plaintiffs have not sufficiently demonstrated that the ordinance violates their rights and have therefore failed to establish that they will suffer irreparable harm in the absence of an injunction.

11

### C. Balance of Equities and Public Interest

When the validity of a statute or ordinance is involved, the balance of equities and public interest do not weigh in the Court's analysis. See Bank One, Utah v. Guttau, 190 F.3d 844, 847-48 (8th Cir. 1999). If these factors were relevant, however, they would weigh against the injunction Plaintiffs seek. Plaintiff have not established any constitutional deprivation, and the public interest lies with ordinances legitimately enacted by the public's elected representatives.

### CONCLUSION

Plaintiffs have not sufficiently established that they are likely to succeed on the merits of the three claims on which they rely for this Motion. As a result, they have not demonstrated that they will suffer irreparable harm in the absence of an injunction. Accordingly, **IT IS HEREBY ORDERED that** Plaintiffs' Motion for Preliminary Injunction (Docket No. 49) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 6, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge