United States Court of Appeals

For the Eighth Circuit

_____

No. 20-3493
_____

301, 712, 2103 and 3151 LLC; 12 Twenty-Second and 1827 LaSalle LLC; 137 East Seventeenth Street LLC; 1522 LaSalle Avenue LLC; 1728 Second Avenue and 1801 Third Avenue LLC; 1806 and 1810 Third Avenue LLC; 1816, 1820 and 1830 Stevens Avenue LLC; 1817 Second Avenue LLC; 1900 and 1906 Clinton Avenue LLC; 1924 Stevens Avenue LLC; 2020 Nicollet Avenue LLC; 2101 Third Avenue LLC; 2323 and 2401 Clinton Avenue LLC; 2417, 2423 and 2439 Blaisdell Avenue LLC; 2427 Blaisdell and 2432 First Avenue LLC; 25 Twenty-Fifth Street LLC; 2535 Clinton Avenue LLC; 2545 Blaisdell Avenue LLC; 2609 Hennepin Avenue LLC; 2633 Pleasant Avenue LLC; 2720 Pillsbury Avenue LLC; 2738 and 2750 Pillsbury Avenue LLC; 2809 Pleasant Avenue LLC; 600 Franklin Avenue LLC; Amy Smith; Blaisdell 3322, LLC; Bloomington 4035, LLC; Bryant Avenue Properties LLC; Colfax Apartments LLC; Dupont Properties LLC; Fletcher Properties, Inc.; Franklin Villa Partnership, L.L.P.; Fremont Apartments, LLC; Fremont Terrace Apartments, L.L.C.; Garfield Court Partnership, L.L.P.; Gasparre New Boston Square, LLC; Gateway Real Estate, L.L.C.; JEC Properties, LLC; Lagoon Apartments, LLC; LL LLC; Northern Gopher Enterprises, Inc.; Patricia L. Fletcher, Inc.; Ray Peterson

*Plaintiffs - Appellants*

v.

City of Minneapolis

*Defendant - Appellee*

------------------------------

National Apartment Association; Pacific Legal Foundation

*Amici on Behalf of Appellant(s)*

Home Line; Housing Justice Center; Lawyers' Committee for Civil Rights Under Law; Mid-Minnesota Legal Aid; Minnesota Collaborative Justice Initiative; Violence Free Minnesota

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 20, 2021
Filed: March 14, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Minneapolis City Council enacted Ordinance No. 244.2030 in 2019. It requires landlords to evaluate applicants for rental housing by either (1) "inclusive screening criteria" or (2) "individualized assessment." Under the first option, applicants may not be rejected due to specifically listed criminal, credit, or rental history. Under the second option, applicants may be rejected for these or other lawful reasons, but the landlord must "accept and consider all supplemental evidence provided with a completed application to explain, justify, or negate the relevance of potentially negative information revealed by screening" and must notify the applicant in writing, specifying the basis for denial and explaining why supplemental evidence "did not adequately compensate for the factors that informed the landlord's decision."

Owners and managers of multi-unit buildings leased for residential use challenged the Ordinance under the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause (and similar provisions of the

Minnesota Constitution).[1] The district court[2] denied the landlords' motion for a preliminary injunction, ruling they had not shown irreparable harm or a likelihood of success on the merits. The landlords appeal. Having jurisdiction under 28 U.S.C. §1292(a)(1), this court affirms.

I.

The United States and Minnesota constitutions prohibit the taking of private property for public use without just compensation. **U.S. Const. amend. V**; *Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226, 241 (1897) (applying the Takings Clause to the states through the Fourteenth Amendment); **Minn. Const. art. I, § 13**. The "clearest sort of taking" is when the government physically invades or appropriates private property, whether permanently or temporarily. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071, 2074 (2021). A taking may also occur "[w]hen the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property." *Id.* at 2071. A use restriction "goes too far" if it fails "the flexible test developed in *Penn Central*, balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* at 2072, *citing* *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

The landlords argue that the Ordinance is either a physical-invasion taking or a *Penn Central* taking. According to the district court, the landlords failed to show a likelihood of success on either claim. This court reviews the district court's material factual findings for clear error, its legal conclusions de novo, and its

---

[1] The landlords also claimed that the Ordinance compelled speech and was unconstitutionally vague and overbroad, issues not raised on appeal.

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

-3-

ultimate decision to grant or deny the injunction for an abuse of discretion. ***Heartland Acad. Cmty. Church v. Waddle***, 335 F.3d 684, 689-90 (8th Cir. 2003).

A.

The landlords argue that the Ordinance is a physical-invasion taking. They claim it "authorizes a permanent physical invasion" by "requiring landlords to rent to individuals they would otherwise disqualify." They rely on *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002), where owners challenged a multi-year moratoria on property development around Lake Tahoe. The Court acknowledged that "compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes." ***Tahoe-Sierra***, 535 U.S. at 322. But the Court rejected the dissent's view that "even a temporary, use-prohibiting regulation"—"the functional equivalent of a forced leasehold"—should be governed by physical-taking cases rather than *Penn Central*. ***Id.*** at 324 n.19, *addressing **id.*** at 348-49 (dissenting opinion of Rehnquist, C.J.). In *Cedar Point*, the Court reiterated *Tahoe-Sierra's* distinction between physical appropriations and use restrictions. ***Cedar Point Nursery***, 141 S. Ct. at 2072 ("The essential question . . . . is whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property. *See Tahoe-Sierra*, 535 U.S. at 321–323, 122 S.Ct. 1465.").

The City stresses the case of *Yee v. City of Escondido*, 503 U.S. 519 (1992). That city's rent-control ordinance (and a state statute) prevented owners of mobile-home rental properties from "decid[ing] who their tenants will be." ***Yee***, 503 U.S. at 526 (alteration added). The Supreme Court rejected the owners' physical-invasion argument:

> This argument, while perhaps within the scope of our regulatory taking cases, cannot be squared easily with our cases on physical takings. The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land.

-4-

Appellate Case: 20-3493     Page: 4     Date Filed: 03/14/2022 Entry ID: 5135824

> . . . .
>
> > Petitioners voluntarily rented their land to mobile home owners . . . . Put bluntly, no government has required any physical invasion of petitioners' property. Petitioners' tenants were invited by petitioners, not forced upon them by the government.
> >
> > . . . .
> >
> > [P]etitioners conten[d] that the ordinance amounts to compelled physical occupation because it deprives petitioners of the ability to choose their incoming tenants. Again, this effect may be relevant to a [*Penn Central*] regulatory taking argument . . . . But it does not convert regulation into the unwanted physical occupation of land. Because they voluntarily open their property to occupation by others, petitioners cannot assert a per se right to compensation based on their inability to exclude particular individuals.

*Id.* at 527, 527-28, 530-31 (alterations added). Based on this voluntariness rationale, *Yee* held: "When a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge, or require the landowner to accept tenants he does not like, without automatically having to pay compensation." *Id.* at 529 (citations omitted).

The landlords counter by emphasizing cases—decided before and after *Yee*—indicating that a law may be a physical-invasion taking even if property owners can avoid the law by leaving the regulated industry.

Before *Yee*, the Court considered a New York statute requiring landlords to install television cables on their residential buildings. ***Loretto v. Teleprompter Manhattan CATV Corp.***, 458 U.S. 419, 421 (1982). The Court held that the statute was a physical-invasion taking, even though the landlords could avoid it by leaving the rental business: "It is true that the landlord could avoid the requirements of § 828 by ceasing to rent the building to tenants. But a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a

-5-

Appellate Case: 20-3493     Page: 5     Date Filed: 03/14/2022 Entry ID: 5135824

physical occupation. Teleprompter's . . . argument proves too much." *Id.* at 439 n.17, *discussed in Yee*, 500 U.S. at 531-32.

After *Yee*, the Court considered a Department of Agriculture mandate that raisin growers set aside part of their crop to the federal government. ***Horne v. Dep't of Agric.***, 576 U.S. 350, 355 (2015). The Department, relying on *Yee*, argued that the mandate was not a physical-invasion taking "because raisin growers voluntarily choose to participate in the raisin market." *Id.* at 365. The Court rejected the Department's voluntariness argument:

> In *Loretto*, we rejected the argument that the New York law was not a taking because a landlord could avoid the requirement by ceasing to be a landlord. We held instead that "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." As the Court explained, the contrary argument "proves too much" . . . . As the Court concluded, property rights "cannot be so easily manipulated."

*Id.*, *citing **Loretto***, 458 U.S. at 439 n.17. The dissenting opinion, emphasizing *Yee*, concluded that "the Government may condition the ability to offer goods in the market on the giving-up of certain property interests without effecting a per se taking." *Id.* at 384 (Sotomayor, J., dissenting). The Court did not cite *Yee*. It did discuss cases involving "voluntary exchange" for a "valuable government benefit." *Id.* at 365-66, *discussing **Ruckelshaus v. Monsanto Co.***, 467 U.S. 986, 1007 (1984); ***Nollan v. California Coastal Comm'n***, 483 U.S. 825, 834 n.2 (1987). But, the Court concluded: "selling produce in interstate commerce . . . is not a special governmental benefit that the Government may hold hostage, to be ransomed by the waiver of constitutional protection." *Id.* at 366.

This court, before *Horne*, applied *Yee's* voluntariness rationale. *See **Iowa Assur. Corp. v. City of Indianola***, 650 F.3d 1094, 1098 (8th Cir. 2011) ("Watson is not required to continue storing vehicles on his property, and so long as he still may choose whether to build the fence or forgo placing more than one vehicle outside,

-6-

he cannot establish . . . a *Loretto* [physical-invasion taking] claim." (alteration added)), *citing* **Yee**, 503 U.S. at 527. *See also* **L.L. Nelson Enters., Inc. v. County of St. Louis**, 673 F.3d 799, 806 (8th Cir. 2012) ("[T]he Takings Clause requires compensation if the government authorizes a *compelled* physical invasion of property"), *quoting* **Yee**, 503 U.S. at 527. But, since *Horne*, this court has not cited *Yee*, while acknowledging *Horne* and its voluntary exchange principle. *See* **Se. Arkansas Hospice, Inc. v. Burwell**, 815 F.3d 448, 450 (8th Cir. 2016) (citing *Horne*'s voluntarily exchange principle as a limit on a general voluntariness approach to takings analysis).

The Supreme Court has posed the essential question as "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." **Cedar Point Nursery**, 141 S. Ct. at 2072. True, an ordinance that would require landlords to rent to individuals they would otherwise reject might be a physical-invasion taking. Regardless, the Ordinance here has an "individualized assessment" option that allows landlords to reject individuals due to undesirable criminal, credit, rental, and other history so long as they comply with the Ordinance's procedural requirements (including considering supplemental evidence and providing a written explanation of rejection). Due to the individualized assessment option, the Ordinance is a restriction on the landlords' ability to use their property, not a physical-invasion taking.

B.

The landlords argue that the individualized assessment option is "illusory" because it is "time-consuming, onerous, expensive, and inefficient to review supplemental information and evidence"—anything the "applicant believes to be relevant"—and because it "would require significant time and attention, including the cost of hiring legal counsel, to properly evaluate and prepare rejections." The landlords emphasize that failure to comply with the Ordinance may result in criminal and administrative penalties, as well as civil suits by aggrieved applicants.

-7-

This argument is analyzed under *Penn Central*. *See **Cedar Point Nursery***, 141 S. Ct. at 2072. The question is whether the landlords demonstrated a likelihood of proving that the individualized assessment option "amounts to a taking" in light of (1) its economic impact, (2) the extent to which it has interfered with distinct investment-backed expectations, and (3) its character. ***Id.***, *citing **Penn Cent.***, 438 U.S. at 124; ***Outdoor Graphics, Inc. v. City of Burlington***, 103 F.3d 690, 695 (8th Cir. 1996).

The district court found that the landlords "offer no evidence in support of their asserted economic harm" and "have not sufficiently demonstrated that the ordinance interferes with their distinct investment-backed expectations . . . ." As the district court noted, the landlords might (but did not) show that, "in the months since the ordinance's effective date, prospective tenants have submitted voluminous additional materials that [landlords] were required to review" or that "third-party screening services . . . now charge [landlords] more for their services because of the ordinance's requirements." These findings of fact are not clearly erroneous. The district court properly ruled that the landlords offered nothing but conclusory assertions of economic impact and interference with investment-backed expectations. *See **Get Away Club, Inc. v. Coleman***, 969 F.2d 664, 667-68 (8th Cir. 1992) (dismissing taking challenge where tavern offered only "conclusory assertions" that state-trooper roadblocks caused "great revenue losses").

The district court's findings also resolve the third *Penn Central* factor—the character of the government action. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." ***Penn Cent.***, 438 U.S. at 124 (citation omitted). The Ordinance here is, as discussed, not a physical invasion. It is more akin to "some public program adjusting the benefits of economic life." *Compare **Hawkeye Commodity Promotions, Inc. v. Vilsack***, 486 F.3d 430, 442 (2007) (character of state law banning lottery game was more like a public program than a physical invasion because the owner of video lottery machines

Appellate Case: 20-3493     Page: 8     Date Filed: 03/14/2022 Entry ID: 5135824

"still has the right to possess, lease and sell the machines") *with* **Hodel v. Irving**, 481 U.S. 704, 716 (1987) ("extraordinary" character of federal statute abrogating the right to leave property to one's heirs—recognized by "the Anglo-American legal system since feudal times"—showed a *Penn Central* taking).

None of the *Penn Central* factors support a taking in this case.

II.

The doctrine of substantive due process, under the Due Process Clause of the Fourteenth Amendment, "protects unenumerated fundamental rights." **Gallagher v. City of Clayton**, 699 F.3d 1013, 1017 (8th Cir. 2012), *citing* **Washington v. Glucksberg**, 521 U.S. 702, 720 (1997). If a state law infringes a fundamental right, it must survive strict scrutiny. **Id.**, *citing* **Glucksberg**, 521 U.S. at 721. Otherwise, this court reviews a statute by "the standard of 'rationally advancing some legitimate governmental purpose.'" **Doe v. Miller**, 405 F.3d 700, 714 (8th Cir. 2005), *quoting* **Reno v. Flores**, 507 U.S. 292, 306 (1993). The landlords argue that the Ordinance infringes their fundamental right to exclude others from entering and using their property.

True, the right to exclude is "one of the most fundamental elements of property ownership." **Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.**, 141 S. Ct. 2485, 2489 (2021). *See* **Kaiser Aetna v. United States**, 444 U.S. 164, 179-80 (1979) (right to exclude "universally held to be a fundamental element of the property right"); **Loretto**, 458 U.S. at 435 (right to exclude "one of the most treasured strands in an owner's bundle of property rights"); **Lingle v. Chevron U.S.A. Inc.**, 544 U.S. 528, 539 (2005) (right to exclude "perhaps the most fundamental of all property interests"); **Cedar Point Nursery**, 141 S. Ct. at 2077 (right to exclude "a fundamental element of the property right," not "an empty formality, subject to modification at the government's pleasure").

-9-

The landlords, however, do not cite any authority that the right to exclude is a fundamental right for the purposes of substantive due process. The Supreme Court has indicated otherwise. *See* ***PruneYard Shopping Ctr. v. Robins***, 447 U.S. 74, 84-85 (1980) (rejecting argument that shopping-mall owners' Fourteenth Amendment due process rights were violated by state constitution provision prohibiting them from excluding individuals for free speech on mall property); ***Dolan v. City of Tigard***, 512 U.S. 374, 384 n.5 (1994) (objecting to dissent's suggestion that the Court analyzed a taking claim under substantive due process rather than the Takings Clause). *Cf.* ***Fletcher Props., Inc. v. City of Minneapolis***, 931 N.W.2d 410, 418-20 (Minn. Ct. App. 2019) (concluding that "neither Minnesota nor the nation overall has a history of recognizing the right to rent property as a fundamental right"), *aff'd on other grounds*, 947 N.W.2d 1 (Minn. 2020).

This court need not address whether the right to exclude is a fundamental right under substantive due process. As discussed, the Ordinance does not infringe any right to exclude others from entering and using landlords' property. Rather, it requires them to follow tenant-screening procedures before excluding others, including considering supplemental materials and later providing a written explanation. In evaluating substantive due process claims, it is important to consider the Supreme Court's admonition: "Substantive due process analysis must begin with a careful description of the asserted right." ***Doe***, 405 F.3d at 710, *quoting* ***Flores***, 507 U.S. at 302. A careful description of the right asserted here is not "the right to exclude others from property," but rather "the right to exclude others from property without following tenant-screening procedures like considering supplemental materials and providing a written explanation." The landlords have not shown that such a right is "objectively, deeply rooted in this Nation's history and tradition." ***Gallagher***, 699 F.3d at 1017, *quoting* ***Glucksberg***, 521 U.S. at 720-21.

Because the Ordinance does not infringe a fundamental right, it is subject to rational basis review. The landlords argue that the Ordinance is not rationally related to a legitimate government purpose because it is ill-designed to accomplish the City's 25 stated "Findings and purpose," including alleviating housing burdens. But

-10-

as the district court ruled, even if the Ordinance fails to serve these purposes—or has the unintended effect of reducing affordable rental housing—"[e]nsuring that citizens have access to affordable housing is undoubtedly a legitimate governmental objective, and the ordinance is directed at ameliorating problems that often prevent people from finding housing" such as criminal records, past evictions, and poor credit. The Ordinance withstands rational basis review.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-11-

Appellate Case: 20-3493     Page: 11     Date Filed: 03/14/2022 Entry ID: 5135824